UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA :

-v.- : **INDICTMENT**

MUSTAFA KAMEL MUSTAFA, : S2 04 Cr. 356 (JFK)
a/k/a "Abu Hamza,"
a/k/a "Abu Hamza al-Masri," :
a/k/a "Mustafa Kamel,"
a/k/a "Mostafa Kamel Mostafa,":

OUSSAMA ABDULLAH KASSIR, :
a/k/a "Abu Abdullah,"
a/k/a "Abu Khadija," :

and :

HAROON RASHID ASWAT, :
a/k/a "Haroon,"
a/k/a "Haroon Aswat," :

Defendants. :

- - - - - - - - - - - - - - - - - - -X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: FEB 0 6 2006

## COUNT ONE

CONSPIRACY TO TAKE HOSTAGES
(THE ATTACK IN YEMEN)

The Grand Jury charges:

1. From on or about December 23, 1998, up to and including on or about December 29, 1998, in an offense begun out of the jurisdiction of any particular State or district, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, unlawfully and knowingly combined, conspired, confederated and agreed together and

with each other to violate Section 1203 of Title 18, United States Code.

2. It was a part and an object of the conspiracy that MUSTAFA KAMEL MUSTAFA, the defendant, and others known and unknown, would and did, inside and outside the United States, unlawfully and knowingly seize and detain and threaten to kill, to injure, and to continue to detain other persons, including two U.S. nationals, in order to compel a third person and a governmental organization, to wit, the government of Yemen, to do and abstain from doing any act as an explicit and implicit condition for the release of the persons detained.

Overt Acts

3. In furtherance of said conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed:

a. In or about late 1998, MUSTAFA KAMEL MUSTAFA, the defendant, provided a co-conspirator not named as a defendant herein ("Co-Conspirator 1"), the leader of the Abyan faction of the Islamic Army of Aden, and a group of co-conspirators not named as defendants herein (hereafter, the "hostage-takers") with a satellite phone.

b. On or about December 27, 1998, MUSTAFA KAMEL MUSTAFA, the defendant, received three telephone calls at his home from the satellite phone he had previously provided to the hostage-takers.

c. On or about December 28, 1998, the hostage-takers stormed a caravan of sport utility vehicles carrying sixteen Western tourists and took the tourists hostage by use of force.

d. On or about December 28, 1998, MUSTAFA KAMEL MUSTAFA, the defendant, spoke to Co-Conspirator 1 on the satellite phone after the hostage-taking was already underway. During that telephone call, MUSTAFA KAMEL MUSTAFA, the defendant, agreed to act as an intermediary for Co-Conspirator 1 and the hostage-takers, and gave Co-Conspirator 1 certain advice related to the hostage-taking.

e. On or about December 29, 1998, after the hostage-taking was underway, MUSTAFA KAMEL MUSTAFA, the defendant, ordered five hundred British pounds worth of additional airtime for the satellite phone being used by the hostage-takers.

f. On or about December 29, 1998, the Yemeni military attempted to rescue the hostages. During the rescue attempt, the hostage-takers used the hostages as human shields and attempted to fight off the Yemeni military. Although the military ultimately overpowered the hostage-takers, during the rescue attempt four of the hostages were killed and several others wounded.

(Title 18, United States Code, Section 1203.)

**COUNT TWO**

HOSTAGE-TAKING
(THE ATTACK IN YEMEN)

The Grand Jury further charges:

4. From on or about December 23, 1998, up to and including on or about December 29, 1998, in an offense begun out of the jurisdiction of any particular State or district, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, unlawfully and knowingly, inside and outside the United States, did seize and detain and threaten to kill, to injure, and to continue to detain other persons, including two U.S. nationals, in order to compel a third person and a governmental organization, to wit, the government of Yemen, to do and abstain from doing any act as an explicit and implicit condition for the release of the persons detained.

(Title 18, United States Code, Sections 1203 and 2.)

**COUNT THREE**

CONSPIRACY TO PROVIDE AND CONCEAL
MATERIAL SUPPORT AND RESOURCES TO TERRORISTS
(THE BLY, OREGON JIHAD TRAINING CAMP)

The Grand Jury further charges:

5. From in or about October 1999, up to and including in or about early 2000, in the Southern District of New York and elsewhere, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," OUSSAMA ABDULLAH KASSIR, a/k/a "Abu Abdullah," a/k/a "Abu Khadija," and HAROON RASHID ASWAT, a/k/a "Haroon," a/k/a "Haroon Aswat," the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, unlawfully and knowingly combined, conspired, confederated and agreed together and with each other to violate Section 2339A of Title 18, United States Code.

6. It was a part and an object of the conspiracy that MUSTAFA KAMEL MUSTAFA, OUSSAMA ABDULLAH KASSIR, and HAROON RASHID ASWAT, the defendants, and others known and unknown, would and did, within the United States, provide material support and resources and conceal and disguise the nature, location, source, and ownership of material support and resources, knowing and intending that they were to be used in preparation for, and in carrying out, a violation of Section 956 of Title 18, United States Code (conspiring to kill, kidnap, maim, and injure persons and to damage and destroy property in a foreign country), and in preparation for,

and in carrying out, the concealment and an escape from the commission of such violation.

Overt Acts

7. In furtherance of said conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. On several occasions in or about October 1999, MUSTAFA KAMEL MUSTAFA, the defendant, discussed with a co-conspirator not named as a defendant herein ("Co-Conspirator 2"), a U.S. citizen, the creation of a jihad training camp in Bly, Oregon. During these discussions, Co-Conspirator 2 asked MUSTAFA KAMEL MUSTAFA, the defendant, to send two of MUSTAFA KAMEL MUSTAFA's followers to the United States in order to assist Co-Conspirator 2 in raising money and establishing the Bly, Oregon jihad training camp.

b. On or about October 25, 1999, Co-Conspirator 2 communicated to MUSTAFA KAMEL MUSTAFA, the defendant, that he and other co-conspirators not named as defendants herein were stock-piling weapons and ammunition in the United States. Co-Conspirator 2 also communicated to MUSTAFA KAMEL MUSTAFA, the defendant, that Co-Conspirator 2 was "expecting the two brothers that we discussed to come in November."

c. In or about late October 1999 or early November 1999, MUSTAFA KAMEL MUSTAFA, the defendant, asked OUSSAMA ABDULLAH KASSIR and HAROON RASHID ASWAT, the defendants, to travel from

London to the United States in order to assist with establishing the Bly, Oregon jihad training camp. Prior to their departure, MUSTAFA KAMEL MUSTAFA, the defendant, gave OUSSAMA ABDULLAH KASSIR and HAROON RASHID ASWAT, the defendants, approximately four thousand British Pounds to pay for expenses incurred while establishing the Bly, Oregon jihad training camp.

d. On November 26, 1999, OUSSAMA ABDULLAH KASSIR and HAROON RASHID ASWAT, the defendants, arrived in the United States at John F. Kennedy International Airport in New York. From New York, OUSSAMA ABDULLAH KASSIR and HAROON RASHID ASWAT, the defendants, traveled by bus to Seattle, Washington, and then by car to Bly, Oregon, in order to help establish the Bly, Oregon jihad training camp, as requested by MUSTAFA KAMEL MUSTAFA, the defendant.

e. In or about December 1999, OUSSAMA ABDULLAH KASSIR and HAROON RASHID ASWAT, the defendants, arrived at the Bly, Oregon property with Co-Conspirator 2, as requested by MUSTAFA KAMEL MUSTAFA, the defendant. After KASSIR and ASWAT arrived at the Bly, Oregon property, KASSIR and ASWAT both told individuals at the property that they had been sent there by MUSTAFA KAMEL MUSTAFA, the defendant, to train people for jihad and to assess the suitability of the Bly, Oregon property for a jihad training camp. KASSIR and ASWAT also both told individuals at the property that they supported Usama bin Laden and al Qaeda, and had received their own jihad training in Afghanistan.

f. In or about December 1999, after he arrived at the Bly, Oregon property, OUSSAMA ABDULLAH KASSIR, the defendant, established security patrols around the perimeter of the property that would constitute the jihad training camp.

g. In or about December 1999, after he arrived at the Bly, Oregon property, OUSSAMA ABDULLAH KASSIR, the defendant, taught two individuals how to kill a person by slitting their throat with a knife and how to fight with a knife in hand-to-hand combat.

h. In or about December 1999, after he arrived at the Bly, Oregon property, OUSSAMA ABDULLAH KASSIR, the defendant, and others discussed a plan to kill truck drivers traveling through Oregon and then steal their cargo for money and goods to support the jihad training camp.

i. In or about December 1999, after they arrived at the Bly, Oregon property, OUSSAMA ABDULLAH KASSIR and HAROON RASHID ASWAT, the defendants, distributed to several individuals a cd-rom containing instructions on how to make bombs and poisons, and told them that they should learn these techniques because they might have to use them in the future.

(Title 18, United States Code, Section 371.)

**COUNT FOUR**

PROVIDING AND CONCEALING
MATERIAL SUPPORT AND RESOURCES TO TERRORISTS
(THE BLY, OREGON JIHAD TRAINING CAMP)

The Grand Jury further charges:

8. From in or about October 1999, up to and including in or about early 2000, in the Southern District of New York and elsewhere, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," OUSSAMA ABDULLAH KASSIR, a/k/a "Abu Abdullah," a/k/a "Abu Khadija," and HAROON RASHID ASWAT, a/k/a "Haroon," a/k/a "Haroon Aswat," the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, within the United States, provided material support and resources and concealed and disguised the nature, location, source, and ownership of material support and resources, knowing and intending that they were to be used in preparation for, and in carrying out, a violation of Section 956 of Title 18, United States Code (conspiring to kill, kidnap, maim, and injure persons and to damage and destroy property in a foreign country), and in preparation for, and in carrying out, the concealment and an escape from the commission of such violation.

(Title 18, United States Code, Sections 2339A and 2.)

**COUNT FIVE**

CONSPIRACY TO PROVIDE MATERIAL SUPPORT AND RESOURCES TO A FOREIGN TERRORIST ORGANIZATION (THE BLY, OREGON JIHAD TRAINING CAMP)

The Grand Jury further charges:

9. From in or about October 1999, up to and including in or about early 2000, in the Southern District of New York and elsewhere, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," OUSSAMA ABDULLAH KASSIR, a/k/a "Abu Abdullah," a/k/a "Abu Khadija," and HAROON RASHID ASWAT, a/k/a "Haroon," a/k/a "Haroon Aswat," the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, unlawfully and knowingly combined, conspired, confederated and agreed together and with each other to violate Section 2339B of Title 18, United States Code.

10. It was a part and an object of the conspiracy that MUSTAFA KAMEL MUSTAFA, OUSSAMA ABDULLAH KASSIR, and HAROON RASHID ASWAT, the defendants, and others known and unknown, would and did, within the United States and subject to the jurisdiction of the United States, knowingly provide material support and resources to a foreign terrorist organization, to wit, a terrorist organization known as "al Qaeda" and led by Usama Bin Laden, which was designated by the Secretary of State as a foreign terrorist organization on or about October 8, 1999, pursuant to Section 219

of the Immigration and Nationality Act, and was redesignated as such on or about October 5, 2001, and October 2, 2003.

Overt Acts

11. In furtherance of said conspiracy, and to effect the illegal object thereof, the following overt act, and the overt acts set out in Count Three of this Indictment which are incorporated herein by this reference, were committed in the Southern District of New York and elsewhere:

a. On or about October 25, 1999, MUSTAFA KAMEL MUSTAFA, the defendant, received a facsimile proposal in London, England, regarding the creation of a jihad training camp in Bly, Oregon.

(Title 18, United States Code, Section 2339B(a)(1).)

## COUNT SIX

PROVIDING MATERIAL SUPPORT
AND RESOURCES TO A FOREIGN TERRORIST ORGANIZATION
(THE BLY, OREGON JIHAD TRAINING CAMP)

The Grand Jury further charges:

12. From in or about October 1999, up to and including in or about early 2000, in the Southern District of New York and elsewhere, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," OUSSAMA ABDULLAH KASSIR, a/k/a "Abu Abdullah," a/k/a "Abu Khadija," and HAROON RASHID ASWAT, a/k/a "Haroon," a/k/a "Haroon

Aswat," the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, within the United States and subject to the jurisdiction of the United States, unlawfully and knowingly did provide, and attempt to provide, material support and resources to a foreign terrorist organization, to wit, a terrorist organization known as "al Qaeda" and led by Usama Bin Laden, which was designated by the Secretary of State as a foreign terrorist organization on or about October 8, 1999, pursuant to Section 219 of the Immigration and Nationality Act, and was redesignated as such on or about October 5, 2001, and October 2, 2003.

(Title 18, United States Code, Sections 2339B(a)(1) and 2.)

**COUNT SEVEN**

CONSPIRACY TO KILL, KIDNAP, MAIM,
AND INJURE PERSONS IN A FOREIGN COUNTRY
(THE BLY, OREGON JIHAD TRAINING CAMP)

The Grand Jury further charges:

13. From in or about October 1999, up to and including in or about May 2002, in the Southern District of New York and elsewhere, OUSSAMA ABDULLAH KASSIR, a/k/a "Abu Abdullah," a/k/a "Abu Khadija," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, within the jurisdiction of the United States, unlawfully and knowingly combined, conspired, confederated and

agreed together and with each other to commit at a place outside the United States an act that would constitute the offense of murder, kidnapping, and maiming if committed in the special maritime and territorial jurisdiction of the United States.

Overt Acts

14. In furtherance of said conspiracy, and to effect the illegal objects thereof, the following overt acts, and the overt acts set out in Count Three of this Indictment which are incorporated herein by this reference, were committed:

a. In or about December 1999, after he arrived at the Bly, Oregon property, OUSSAMA ABDULLAH KASSIR, the defendant, taught two individuals how to kill a person by slitting their throat with a knife and how to fight with a knife in hand-to-hand combat.

b. In or about December 1999, after he arrived at the Bly, Oregon property, OUSSAMA ABDULLAH KASSIR, the defendant, distributed to several individuals a cd-rom containing instructions on how to make bombs and poisons, and told them that they should learn these techniques because they might have to use them in the future.

c. In or about May 2002, OUSSAMA ABDULLAH KASSIR, the defendant, called one of the individuals who had been present at the Bly, Oregon property to inquire about the arrest of another individual who had been present at the Bly, Oregon property by counterterrorism agents in the United States.

(Title 18, United States Code, Section 956(a).)

**COUNT EIGHT**

CONSPIRACY TO PROVIDE AND CONCEAL
MATERIAL SUPPORT AND RESOURCES TO TERRORISTS
(KASSIR'S TERRORIST WEBSITES)

The Grand Jury further charges:

15. From in or about at least December 2001, up to and including on or about December 11, 2005, in the Southern District of New York and elsewhere, OUSSAMA ABDULLAH KASSIR, a/k/a "Abu Abdullah," a/k/a "Abu Khadija," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, unlawfully and knowingly combined, conspired, confederated and agreed together and with each other to violate Section 2339A of Title 18, United States Code.

16. It was a part and an object of the conspiracy that OUSSAMA ABDULLAH KASSIR, the defendant, and others known and unknown, would and did provide material support and resources and conceal and disguise the nature, location, source, and ownership of material support and resources, knowing and intending that they

were to be used in preparation for, and in carrying out, a violation of Section 956 of Title 18, United States Code (conspiring to kill, kidnap, maim, and injure persons and to damage and destroy property in a foreign country), and in preparation for, and in carrying out, the concealment of an escape from the commission of such violation.

Overt Acts

17. In furtherance of said conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. In or about December 2001, OUSSAMA ABDULLAH KASSIR, the defendant, established a website with the web address mii.faithweb.com, which contained, among other things, terrorist materials and information and instructions on how to build a bomb.

b. In or about March 2002, OUSSAMA ABDULLAH KASSIR, the defendant, established a website on an internet server in White Plains, New York, with the web address www.alqqa3qa3.8m.com, which contained, among other things, terrorist materials and information and instructions on how to build bombs and make poisons.

c. From in or about March 2002, up to and including in or about October 2003, OUSSAMA ABDULLAH KASSIR, the defendant, stored on his personal computer images of firearms, bombs, and other weapons which he had accumulated in connection with the operation of a website with the web address

www.uddat.8k.com.

(Title 18, United States Code, Section 2339A(a).)

**COUNT NINE**

PROVIDING AND CONCEALING
MATERIAL SUPPORT AND RESOURCES TO TERRORISTS
(KASSIR'S TERRORIST WEBSITES)

The Grand Jury further charges:

18. From in or about at least December 2001, up to and including on or about December 11, 2005, in the Southern District of New York and elsewhere, OUSSAMA ABDULLAH KASSIR, a/k/a "Abu Abdullah," a/k/a "Abu Khadija," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, unlawfully and knowingly did provide, and attempt to provide, material support and resources and conceal and disguise the nature, location, source, and ownership of material support and resources, knowing and intending that they were to be used in preparation for, and in carrying out, a violation of Section 956 of Title 18, United States Code (conspiring to kill, kidnap, maim, and injure persons and to damage and destroy property in a foreign country), and in preparation for, and in carrying out, the concealment and an escape from the commission of such violation.

(Title 18, United States Code, Sections 2339A and 2.)

**COUNT TEN**

CONSPIRACY TO PROVIDE MATERIAL SUPPORT
AND RESOURCES TO A FOREIGN TERRORIST ORGANIZATION
(KASSIR'S TERRORIST WEBSITES)

The Grand Jury further charges:

19. From in or about at least December 2001, up to and including on or about December 11, 2005, in the Southern District of New York and elsewhere, OUSSAMA ABDULLAH KASSIR, a/k/a "Abu Abdullah," a/k/a "Abu Khadija," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, unlawfully and knowingly combined, conspired, confederated and agreed together and with each other to violate Section 2339B of Title 18, United States Code.

20. It was a part and an object of the conspiracy that OUSSAMA ABDULLAH KASSIR, the defendant, and others known and unknown, would and did knowingly provide material support and resources to a foreign terrorist organization, to wit, a terrorist organization known as "al Qaeda" and led by Usama Bin Laden, which was designated by the Secretary of State as a foreign terrorist organization on or about October 8, 1999, pursuant to Section 219 of the Immigration and Nationality Act, and was redesignated as such on or about October 5, 2001, and October 2, 2003.

Overt Acts

21. In furtherance of said conspiracy, and to effect the illegal object thereof, the following overt act, and the overt acts

set out in Count Eight of this Indictment which are incorporated herein by this reference, were committed in the Southern District of New York and elsewhere:

a. In or about March 2002, OUSSAMA ABDULLAH KASSIR, the defendant, posted a document entitled "The Mujahideen Explosives Handbook" to a website he was operating with the web address www.alqqa3qa3.8m.com.

(Title 18, United States Code, Section 2339B(a)(1).)

**COUNT ELEVEN**

PROVIDING MATERIAL SUPPORT
AND RESOURCES TO A FOREIGN TERRORIST ORGANIZATION
(KASSIR'S TERRORIST WEBSITES)

The Grand Jury further charges:

22. From in or about at least December 2001, up to and including on or about December 11, 2005, in the Southern District of New York and elsewhere, OUSSAMA ABDULLAH KASSIR, a/k/a "Abu Abdullah," a/k/a "Abu Khadija," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York unlawfully and knowingly did provide, and attempt to provide, material support and resources to a foreign terrorist organization, to wit, a terrorist organization known as "al Qaeda" and led by Usama Bin Laden, which was designated by the Secretary of State as a foreign terrorist organization on or about October 8, 1999, pursuant to Section 219

of the Immigration and Nationality Act, and was redesignated as such on or about October 5, 2001, and October 2, 2003.

(Title 18, United States Code, Sections 2339B(a)(1) and 2.)

**COUNT TWELVE**

CONSPIRACY TO KILL, KIDNAP, MAIM,
AND INJURE PERSONS IN A FOREIGN COUNTRY
(KASSIR'S TERRORIST WEBSITES)

The Grand Jury further charges:

23. From in or about at least December 2001, up to and including on or about December 11, 2005, in the Southern District of New York and elsewhere, OUSSAMA ABDULLAH KASSIR, a/k/a "Abu Abdullah," a/k/a "Abu Khadija," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, within the jurisdiction of the United States, unlawfully and knowingly combined, conspired, confederated and agreed together and with each other to commit at a place outside the United States an act that would constitute the offense of murder, kidnapping, and maiming if committed in the special maritime and territorial jurisdiction of the United States.

Overt Acts

24. In furtherance of said conspiracy, and to effect the illegal objects thereof, the following overt act, and the overt acts set out in Count Eight of this Indictment which are incorporated herein by this reference, were committed in the

Southern District of New York and elsewhere:

a. In or about March 2002, OUSSAMA ABDULLAH KASSIR, the defendant, posted a document entitled "The Mujahideen Poisons Handbook" to a website he was operating with the web address www.alqqa3qa3.8m.com.

(Title 18, United States Code, Section 956(a).)

**COUNT THIRTEEN**

DISTRIBUTING INFORMATION RELATING TO EXPLOSIVES, DESTRUCTIVE DEVICES, AND WEAPONS OF MASS DESTRUCTION (KASSIR'S TERRORIST WEBSITES)

The Grand Jury further charges:

25. From in or about at least December 2001, up to and including on or about December 11, 2005, in the Southern District of New York and elsewhere, OUSSAMA ABDULLAH KASSIR, a/k/a "Abu Abdullah," a/k/a "Abu Khadija," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, taught and demonstrated the making and use of explosives, destructive devices, and weapons of mass destruction, and distributed information pertaining to, in whole and in part, the manufacture and use of explosives, destructive devices, and weapons of mass destruction, with the intent that the teaching, demonstration, and information be used for, and in furtherance of, activities that constitute Federal crimes of violence, to wit, KASSIR established and operated

numerous websites, which contained, among other things, terrorist materials and information and instructions on how to build bombs and make poisons.

(Title 18, United States Code, Sections 842(p)(2)(A) and 2.)

**COUNT FOURTEEN**

PROVIDING ASSISTANCE AND INDUCEMENT IN THE DEVELOPMENT, PRODUCTION, AND USE OF CHEMICAL WEAPONS
(KASSIR'S TERRORIST WEBSITES)

The Grand Jury further charges:

26. From in or about at least December 2001, up to and including on or about December 11, 2005, in the Southern District of New York and elsewhere, OUSSAMA ABDULLAH KASSIR, a/k/a "Abu Abdullah," a/k/a "Abu Khadija," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, assisted and induced persons to develop, produce, otherwise acquire, transfer directly and indirectly, receive, stockpile, retain, own, possess, use, and threaten to use chemical weapons, to wit, KASSIR established and operated numerous websites, which contained, among other things, terrorist materials and information and instructions on how to build bombs and make poisons.

(Title 18, United States Code, Sections 229(a) and 2.)

**COUNT FIFTEEN**

CONSPIRACY TO PROVIDE AND CONCEAL
MATERIAL SUPPORT AND RESOURCES TO TERRORISTS
(FACILITATING VIOLENT JIHAD IN AFGHANISTAN)

The Grand Jury further charges:

27. From in or about June 2000, up to and including on or about December 19, 2001, in the Southern District of New York and elsewhere, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, unlawfully and knowingly combined, conspired, confederated and agreed together and with each other to violate Section 2339A of Title 18, United States Code.

28. It was a part and an object of the conspiracy that MUSTAFA KAMEL MUSTAFA, the defendant, and others known and unknown, would and did provide material support and resources and conceal and disguise the nature, location, source, and ownership of material support and resources, knowing and intending that they were to be used in preparation for, and in carrying out, a violation of Section 956 of Title 18, United States Code (conspiring to kill, kidnap, maim, and injure persons and to damage and destroy property in a foreign country), and in preparation for, and in carrying out, the concealment and an escape from the commission of such violation.

Overt Acts

29. In furtherance of said conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. In or about June 2000, Co-Conspirator 2 traveled from London, England, to New York, in part, to raise money for the Finsbury Park Mosque's hijrah fund from worshipers at local mosques. During this trip, Co-Conspirator 2 traveled through Manhattan, New York, on his way to attempt to collect money at a mosque in Long Island, New York. The money collected by Co-Conspirator 2 during this trip was added to the Finsbury Park Mosque's hijrah fund when Co-Conspirator 2 returned to London.

b. In or about November 2000, MUSTAFA KAMEL MUSTAFA, the defendant, asked Co-Conspirator 2, a U.S. citizen, to escort another co-conspirator not named as a defendant herein ("Co-Conspirator 3"), who was one of MUSTAFA KAMEL MUSTAFA's followers, from London, England, to a jihad training camp in Afghanistan operated by a "front-line commander."

c. In or about November 2000, Co-Conspirator 2 took money out of the Finsbury Park Mosque's hijrah fund, which was to be used for certain travel expenses relating to the trip to Afghanistan with Co-Conspirator 3.

d. In or about November 2000, MUSTAFA KAMEL MUSTAFA, the defendant, introduced Co-Conspirator 2 to another co-conspirator not named as a defendant herein ("Co-Conspirator 4") for purposes of arranging safehouses and lodging in Pakistan and

safe passage and transportation into Afghanistan.

e. In or about November 2000, Co-Conspirator 2 and Co-Conspirator 3 traveled together from London, England, to Pakistan. Both men separately entered Afghanistan shortly thereafter.

(Title 18, United States Code, Section 2339A.)

**COUNT SIXTEEN**

PROVIDING AND CONCEALING
MATERIAL SUPPORT AND RESOURCES TO TERRORISTS
(FACILITATING VIOLENT JIHAD IN AFGHANISTAN)

The Grand Jury further charges:

30. From in or about June 2000, up to and including on or about December 19, 2001, in the Southern District of New York and elsewhere, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, provided material support and resources and concealed and disguised the nature, location, source, and ownership of material support and resources, knowing and intending that they were to be used in preparation for, and in carrying out, a violation of Section 956 of Title 18, United States Code (conspiring to kill, kidnap, maim, and injure persons and to damage and destroy property in a foreign country), and in preparation for, and in carrying out, the concealment and an escape from the

commission of such violation.

(Title 18, United States Code, Sections 2339A and 2.)

## COUNT SEVENTEEN

CONSPIRACY TO PROVIDE MATERIAL SUPPORT
AND RESOURCES TO A FOREIGN TERRORIST ORGANIZATION
(FACILITATING VIOLENT JIHAD IN AFGHANISTAN)

The Grand Jury further charges:

31. From in or about June 2000, up to and including on or about December 19, 2001, in the Southern District of New York and elsewhere, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, unlawfully and knowingly combined, conspired, confederated and agreed together and with each other to violate Section 2339B of Title 18, United States Code.

32. It was a part and an object of the conspiracy that MUSTAFA KAMEL MUSTAFA, the defendant, and others known and unknown, would and did, within the United States and subject to the jurisdiction of the United States, knowingly provide material support and resources to a foreign terrorist organization, to wit, a terrorist organization known as "al Qaeda" and led by Usama Bin Laden, which was designated by the Secretary of State as a foreign terrorist organization on or about October 8, 1999, pursuant to Section 219 of the Immigration and Nationality Act, and was

redesignated as such on or about October 5, 2001, and October 2, 2003.

Overt Acts

33. In furtherance of said conspiracy, and to effect the illegal object thereof, the following overt act, and the overt acts set out in Count Fifteen of this Indictment which are incorporated herein by this reference, were committed in the Southern District of New York and elsewhere:

a. In or about March or April 2001, MUSTAFA KAMEL MUSTAFA, the defendant, sent directions to Co-Conspirator 3, who was in Afghanistan at the time, to seek out the "front-line commander" in Afghanistan who was expecting Co-Conspirator 3.

(Title 18, United States Code, Section 2339B(a)(1).)

**COUNT EIGHTEEN**

PROVIDING MATERIAL SUPPORT AND RESOURCES TO A FOREIGN TERRORIST ORGANIZATION (FACILITATING VIOLENT JIHAD IN AFGHANISTAN)

The Grand Jury further charges:

34. From in or about June 2000, up to and including on or about December 19, 2001, in the Southern District of New York and elsewhere, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District

of New York, within the United States and subject to the jurisdiction of the United States, knowingly provided material support and resources to a foreign terrorist organization, to wit, a terrorist organization known as "al Qaeda" and led by Usama Bin Laden, which was designated by the Secretary of State as a foreign terrorist organization on or about October 8, 1999, pursuant to Section 219 of the Immigration and Nationality Act, and was redesignated as such on or about October 5, 2001, and October 2, 2003.

(Title 18, United States Code, Sections 2339B(a)(1) and 2.)

## COUNT NINETEEN

CONSPIRACY TO SUPPLY GOODS
AND SERVICES TO THE TALIBAN
(IEEPA VIOLATIONS)

The Grand Jury further charges:

35. On July 4, 1999, President of the United States William J. Clinton declared a national emergency in Executive Order 13129 to deal with the threat posed by al Qaeda and the Taliban, Afghanistan's dominant political force at that time. Specifically, the President found that:

> The actions and policies of the Taliban in Afghanistan, in allowing territory under its control in Afghanistan to be used as a safe haven and base of operations for Usama bin Laden and the [al Qaeda] organization who have committed and threaten to continue to commit acts of violence against the United States and its nationals, constitute an unusual and extraordinary threat to the national security and foreign policy of the United

States.

36. In his Executive Order 13129, the President prohibited, among other things, United States persons from making or receiving any contribution of funds, goods, or services to or for the benefit of the Taliban, and from supplying, directly or indirectly, any goods, software, technology, or services to the Taliban or to the territory of Afghanistan controlled by the Taliban.

37. On June 30, 2000, the national emergency with respect to the Taliban was continued. One year later, the national emergency was again continued, pursuant to a finding by President of the United States George W. Bush that "[t]he Taliban continues to allow territory under its control in Afghanistan to be used as a safe haven and base of operations for Usama bin Laden and the [al Qaeda] organization who have committed and threaten to continue to commit acts of violence against the United States and its nationals."

38. From in or about the Spring of 2000, up to and including in or about late 2001, in the Southern District of New York and elsewhere, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, unlawfully and knowingly combined, conspired, confederated and agreed together and with each other to violate

Section 1705(b) of Title 50, United States Code, and Sections 545.204 and 545.206(b) of Title 31, Code of Federal Regulations.

39. It was a part and an object of the conspiracy that MUSTAFA KAMEL MUSTAFA, the defendant, and others known and unknown, did unlawfully and knowingly violate a regulation issued under Chapter 35 of Title 50, United States Code, in that at least one United States person, along with others known and unknown, did conspire to unlawfully supply funds, goods, and services to the Taliban, to the territory of Afghanistan controlled by the Taliban, and to persons whose property and interests in property were blocked pursuant to Title 31, Code of Federal Regulations, Section 545.201.

Overt Acts

40. In furtherance of said conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. From in or about the Spring of 2000, up to and including at least September 6, 2001, MUSTAFA KAMEL MUSTAFA, the defendant, posted messages on the Supporters of Shariah ("SOS") website, with the assistance of Co-Conspirator 2, a U.S. citizen, urging the defendant's followers to donate money, goods, and services to Taliban-sponsored programs in the area of Afghanistan controlled by the Taliban.

b. In or about late 2000, at the request of MUSTAFA KAMEL MUSTAFA, the defendant, Co-Conspirator 2 agreed to

deliver Co-Conspirator 3, a person desiring to undergo violent jihad training, to an individual located in the territory of Afghanistan controlled by the Taliban.

c. In or about late 2000, at the request of MUSTAFA KAMEL MUSTAFA, the defendant, Co-Conspirator 2 delivered compact discs containing MUSTAFA KAMEL MUSTAFA's statements to certain individuals located in the territory of Afghanistan controlled by the Taliban.

d. From in or about March 2001, up to and including at least September 6, 2001, MUSTAFA KAMEL MUSTAFA, the defendant, and Co-Conspirator 2 discussed plans to establish a computer lab in Afghanistan. During these discussions, MUSTAFA KAMEL MUSTAFA, the defendant, stated that he wanted the computer lab to be located in Kandahar and to service Taliban officials and the Afghani people located in Kandahar, which was then controlled by the Taliban.

e. On or about September 6, 2001, Co-Conspirator 2 departed London, England for Pakistan, and then Afghanistan. Prior to his departure, MUSTAFA KAMEL MUSTAFA, the defendant, gave Co-Conspirator 2 approximately six thousand British Pounds which were, in part, to be used to lease a building which would house the computer lab and to pay for some of the start up expenses for the computer lab.

(Title 18, United States Code, Section 371;
Title 50, United States Code, Section 1705(b); and
Title 31 Code of Federal Regulations,
Sections 545.204 and 545.206(b).)

[signature]
FOREPERSON

[signature]
MICHAEL J. GARCIA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

**- v -**

**MUSTAFA KAMEL MUSTAFA,**
**a/k/a "Abu Hamza,"**
**a/k/a "Abu Hamza al-Masri,"**
**a/k/a "Mustafa Kamel,"**
**a/k/a "Mostafa Kamel Mostafa,"**
**OUSSAMA ABDULLAH KASSIR,**
**a/k/a "Abu Abdullah,"**
**a/k/a "Abu Khadija," and**
**HAROON RASHID ASWAT,**
**a/k/a "Haroon,"**
**a/k/a "Haroon Aswat,"**

**Defendants.**

**INDICTMENT**

S2 04 Cr. 356 (JFK)

(Title 18, United States Code, Sections 2, 229(a), 371, 842(p)(2)(A), 956(a), 1203, 2339A,and 2339B, and Title 50, United States Code, Section 1705(b))

MICHAEL J. GARCIA
United States Attorney.

**A TRUE BILL**

Bruce Bradley
Foreperson.

2/6/06 Filed Indictment. Pitman.