UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------- X
UNITED STATES OF AMERICA          :
                                  :
        -against-                 :
                                  :     **OPINION AND ORDER**
OUSSAMA KASSIR,                   :     04 Cr. 356 (JFK)
     a/k/a "Abu Abdullah,"        :
     a/k/a "Abu Khadija,"         :
                                  :
                 Defendant.       :
--------------------------------- X

<u>APPEARANCES</u>:


          For the United States of America:
               LEV L. DASSIN
               Acting United States Attorney
                for the Southern District of New York
               One St. Andrew's Plaza
               New York, NY 10007
               Of Counsel: Eric B. Bruce
                           Michael Farbiarz
                           Assistant United States Attorney

          For Defendant:
               Mark S. DeMarco
               2027 Williamsbridge Road
               Second Floor
               Bronx, NY 10461

               Edgardo Ramos
               Day Pitney, LLP
               7 Times Square
               Times Square Tower
               New York, NY 10036

**JOHN F. KEENAN, United States District Judge:**

Defendant Oussama Abdullah Kassir, a/k/a "Abu Abdulla" a/k/a "Abu Khadija," is charged with providing material support to a terrorist organization, namely, al Qaeda, by attempting to establish a jihad training camp in Bly, Oregon, and by operating and maintaining a number of terrorist websites.   Trial is scheduled to begin on April 13, 2009.

Before the Court is the Government's motion in limine seeking to admit certain evidence as direct evidence of the charged crimes or, alternatively, as evidence of other acts pursuant to Federal Rule of Evidence 404(b).

## I.  BACKGROUND

The Court assumes familiarity with its previous opinions in this case, which discuss the underlying facts and the charges in the indictment. See United States v. Kassir, No. 04 Cr. 356 (S.D.N.Y. Apr. 2, 2009); 2008 U.S. Dist. LEXIS 51256 (S.D.N.Y. July 3, 2008).   Below it discusses only those facts relevant to the instant motion.

The Government has asked the Court to find the following four categories of evidence admissible at trial:

(1)  Kassir's prior association with terrorist groups other than al Qaeda:  Over the years, Kassir  .   .   .  told numerous witnesses

2

(including [an officer of the Swedish Security Police (known as "SAPO")] during a recorded interview) that he had previously associated with members of other terrorist organizations, including but not limited to Lashkar-e-Tayyiba ("LET") and Hezbollah.

(2) Kassir's prior attendance at, or attempts to attend, jihad training camps in other countries, such as Kashmir, Lebanon, and Afghanistan: Over several years, Kassir repeatedly told numerous witnesses (including both lay witnesses and SAPO Police Officers) that he had previously attended jihad training camps and/or attempted to attend jihad training camps in other countries. Kassir also told at least one witness he attended a training camp funded by Usama bin Laden. . . .

(3) Kassir's admissions that he has previously killed people: At times, Kassir has also indicated that he has killed people during the course of fighting jihad. . . .

(Gov't's Br. 7.) At the Court's request, the Government elaborated on this third category of evidence in a letter

dated April 6, 2009:  Angelica Osman, a Government witness, will testify that, while demonstrating how to slit someone's throat with a knife at the Bly camp, Defendant stated he had used that very knife to kill non-believers during jihad.  A second Government witness, Ayat Hakima, will testify that, on a different occasion, Defendant stated that "he had been a hit man for Usama bin Laden and had killed thirty-four people by various methods while fighting jihad." (Gov't's Apr. 6, 2009, Letter.)

    (4)    <u>Kassir's activities at the Seattle Mosque after departing the Bly, Oregon ranch</u>: . . . [S]everal witnesses will testify in this matter that, after leaving Bly, Kassir and co-conspirator Haroon Aswat returned to the Dar Ul Salaam Mosque in Seattle.  Once back in Seattle, Kassir and Aswat found in abundance what Bly lacked – young Muslim men who were followers of Abu Hamza al-Masri and were willing, at varying levels, to undertake jihad training.  During their stay at the Mosque, Kassir engaged in training in activities such as assembling and disassembling of AK-47's, altering AK-47's to launch grenades, possessing

firearms, the building of silencers for a
firearm, and practicing formations to
"protect the Islamic leader." At the
Mosque, Kassir also distributed compact
disks containing instructions on how to
build bombs and other weapons. Finally,
Kassir gathered men from the Mosque together
and advocated terrorist attacks and suicide
bombings.

(Gov't's Br. 8.)

The Government argues that evidence of Defendant's
attendance at jihad training camps in other countries,
admissions that he killed people during jihad fighting, and
activities at the Seattle mosque are admissible as direct
evidence of the charged crimes or, alternatively, as other
acts evidence under Rule 404(b). The Government also
argues that evidence of Defendant's association with
terrorist groups other than al Qaeda is admissible as other
acts evidence under Rule 404(b).

## II.  DISCUSSION

### A.  Uncharged Criminal Activity as Direct Evidence

"It is well established that evidence of uncharged
criminal activity is not considered other crimes evidence
under Fed. R. Evid. 404(b) if it arose out of the same

5

transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997) (internal quotation marks and indicators of alterations from the original omitted).   Evidence that meets the criteria set forth in Gonzalez is considered direct evidence of the charged offenses, meaning the court is "not required to instruct the jury against making an improper inference of criminal propensity." United States v. Brand, No. 04 Cr. 194, 2005 U.S. Dist. LEXIS 471, at *8 (S.D.N.Y. Jan. 12, 2005).   However, "where it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." United States v. Nektalov, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004); see also 1 Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, Federal Rules of Evidence Manual § 404.02[11] (8th ed. 2002) ("We note that there is no significant cost to requiring a Rule 404(b) analysis; all the prosecution must do is establish a not-for-character purpose for the bad acts evidence, and give pretrial notice . . . .").

**1.  Jihad Training Camps in Other Countries**

The Government argues that evidence that Defendant attended and attempted to attend jihad training camps in other countries is direct evidence of the charged conduct and therefore need not be analyzed under Rule 404(b). According to the Government, without knowing that Kassir attended or attempted to attend other jihad training camps, the jury would find the Government's accusation that Kassir was the lead trainer at the Bly camp "artificial, contrived, and unrealistic." (Gov't's Br. 9.)   The Government also argues that Kassir's past attendance at jihad training camps is directly relevant to the website charges in that it could explain where Kassir acquired or became familiar with the training materials that he distributed over the Internet.

These arguments wrongly assume that uncharged criminal activity that provides context or is relevant to the charged conduct need not be treated as other act evidence under Rule 404(b).   The true test is not whether the evidence provides context or is relevant, but rather whether it meets the criteria set forth in <u>Gonzalez</u>. Underscoring this point are the decisions of numerous courts in this circuit that found it necessary to conduct Rule 404(b) analysis of uncharged criminal activity that merely provided context or was somehow relevant to the

charged conduct. See, e.g., United States v. Townsend, No. 06 Cr. 34, 2007 U.S. Dist. LEXIS 32639 (S.D.N.Y. Apr. 30, 2007) (Keenan, J.) (conducting Rule 404(b) analysis after finding that, "although the proffered evidence is certainly relevant to show the background of the charged conspiracy, it does not appear to be inexorably intertwined." (internal quotation marks and indicators of alterations from the original omitted)); United States v. Ferguson, 246 F.R.D. 107, 115 (D. Conn. 2007) (same); Nektalov, 325 F. Supp. 2d at 370 (same). Therefore, to avoid Rule 404(b) analysis, evidence of uncharged criminal activity must do more than provide context or be relevant; it must meet the Gonzalez criteria, such as by being inextricably intertwined with the charged conduct.

The Government directs the Court to three cases in which the Second Circuit found that uncharged criminal activity was inextricably intertwined with the charged conduct and, therefore, admissible as direct evidence: United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000), United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997), and United States v. Towne, 870 F.2d 880, 886 (2d

Cir. 1989).[1]  All three cases are distinguishable from the instant case.

In Carboni, the Second Circuit found that, where the defendant was charged with making false statements to obtain a line of credit, evidence that he falsified his business's inventory – the uncharged criminal conduct – was inextricably intertwined with his efforts to dupe his bank. In essence, the Second Circuit found that the uncharged conduct was "part and parcel" of the charged conduct. United States v. Newton, No. 01 Cr. 635, 2002 U.S. Dist. LEXIS 2414, at *7 (S.D.N.Y. Feb. 11, 2002) (interpreting Carboni).  Kassir's prior attendance at jihad training camps in other countries, on the other hand, is a discrete offense.  It was not undertaken to conceal or further the charged conduct; in fact, it was not coordinated with the charged conduct in any way.

---

[1] The Government also cites several other cases for the general proposition that background evidence can be relevant and admissible: United States v. Rosa, 11 F.3d 315, 334 (2d Cir. 1993); United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994); United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990); United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992); United States v. Lasanta, 978 F.2d 1300, 1307 (2d Cir. 1992); and United States v. Brennan, 798 F.2d 581, 589 (2d Cir. 1986).  Notably, in all of these cases, the Second Circuit found the evidence of uncharged criminal activity admissible as other act evidence under 404(b) and not as direct evidence of the charged conduct.

In <u>Gonzalez</u>, the Second Circuit found it unnecessary to apply Rule 404(b) to evidence of defendants' uncharged attempted robbery since the attempted robbery explained the sequence of events surrounding the contemporaneous, charged firearm offense.   The circuit court was concerned that, without learning about the attempted robbery, the jury would find defendants' conduct immediately prior to their arrest baffling, such as the fact that defendants were arrested while running down the street, away from the scene of the attempted burglary, with their guns drawn.   In the instant case, Kassir's prior attendance at jihad training camps is not essential to understanding the sequence of events surrounding the charged conduct.   The uncharged conduct here is far more remote to the charged conduct in both time and place and is thus not essential to completing the story.

Finally, in <u>Towne</u>, the Second Circuit considered the admissibility of evidence showing that the defendant possessed a weapon on days other than the specific date alleged in the indictment's firearm charge.   After noting that "[t]he continuous possession of the same gun does not amount to a series of crimes, but rather constitutes a single offense," the circuit court ruled that the evidence of possession on other days was direct evidence of the

charged offense. <u>Towne</u>, 870 F.2d at 886. Unlike the conduct in <u>Towne</u>, however, Kassir's charged and uncharged conduct are not a single continuous offense.

Evidence that Kassir attended or attempted to attend jihad training camps in other countries does not meet the <u>Gonzalez</u> criteria. This uncharged criminal activity is not part of the same transaction as the charged conduct, is not inextricably intertwined with that conduct, and is not necessary to complete the story. It is conduct wholly distinct from any that the Second Circuit has found to be direct evidence of the charged conduct. To be admissible, then, this evidence must pass muster under Rule 404(b).

### 2. Admissions of Killings

For largely the same reasons just discussed, evidence that Defendant admits he killed people in the course of fighting jihad does not meet the criteria set forth in <u>Gonzalez</u> and therefore must be analyzed under Rule 404(b). The killings were not coordinated with the charged conduct, were temporally and spatially remote from that conduct, and were not part of the same continuous offense. In short, they are not inextricably intertwined with the charged conduct, nor are they necessary to complete the story. Although Kassir's admissions that he killed people may provide relevant context – for instance, implying that

Kassir was competent to teach killing techniques – as the Court has already noted, evidence that provides context but fails to meet the Gonzalez criteria does not escape Rule 404(b) analysis.

### 3.  Seattle Mosque

Evidence of Defendant's activities at the Seattle mosque is admissible as direct evidence of the charged conduct.  "When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself." United States v. Thai, 29 F.3d 785, 812 (2d Cir. 1994); accord United States v. Bagaric, 706 F.2d 42, 64 (2d Cir. 1983) ("It is clear the Government may offer proof of acts not included within the indictment, as long as they are within the scope of the conspiracy."); United States v. Concepcion, 983 F.2d 369, 392 (2d Cir. 1992) ("An act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an other act within the meaning of Rule 404(b); . . . it is part of the very act charged." (internal quotation marks omitted)).

The indictment contains multiple conspiracy charges, including conspiracy to provide and conceal material support and resources to terrorists "[f]rom in or about October 1999, up to and including in or about early 2000" (Count One) and conspiracy to provide material support and

resources to a foreign terrorist organization during the same time frame (Count Two).[2] Defendant's activities at the Seattle mosque took place during the charged time frame for these conspiracies. According to the Government, Kassir arrived in Bly in late November or early December 1999, and then moved to Seattle "a few weeks later." (Gov't's Br. 11.) The Government further proffers that documentary evidence from the Immigration and Naturalization Service will confirm that Kassir left the United States on March 7, 2000. Therefore, the jihad training Kassir provided at the Seattle Mosque took place sometime between late November 1999 and March 2000 — in other words, during the charged time frame.

Defendant's activities at the Seattle mosque were also in furtherance of the charged conspiracies. While in Seattle, Defendant allegedly taught young men how to use firearms, assume combat formations, and make bombs. This conduct is nearly identical to the conduct that the indictment cites as the overt acts supporting the conspiracy charge in Count One, namely, the training Kassir provided at the Bly camp. Defendant's activities at the Seattle mosque are within the scope of the conspiracies

---

[2] The Court refers to the counts as numbered in the redacted indictment provided to the Defendant with a March 17, 2009, letter from the Government.

charged in Counts One and Two, were done in furtherance of those conspiracies, and, therefore, are direct evidence of those conspiracies.

## B.   Other Act Evidence

The Court now considers whether evidence of Kassir's association with terrorist groups other than al Qaeda, attendance and attempted attendance at jihad training camps in other countries, and admissions that he killed people while fighting jihad are admissible as other act evidence.

Rule 404(b) provides, in relevant part,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b). The Second Circuit "follow[s] an inclusionary rule, allowing the admission of [other act] evidence for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence." United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994). Rule 403 requires the exclusion of even relevant other act evidence "if its probative value is substantially outweighed by the

danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403.  Where evidence is admitted pursuant to Rule 404(b), upon defendant's request the Court must give an appropriate limiting instruction to the jury. United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992).

**1.  Association with Terrorist Groups Other Than al Qaeda**

Evidence that Defendant associated with terrorist groups other than al Qaeda is admissible to prove Defendant's motive, intent, preparation, knowledge, and absence of mistake or accident.  This other act evidence is relevant for these proper purposes in that it tends to show, among other things, that Defendant (1) was motivated by a jihadist agenda, a shared aim of LET, Hezbollah, and al Qaeda; (2) intended to provide material support to al Qaeda, an organization with goals similar to those of organizations with which Defendant had already consorted; (3) was in a position to glean enough information from other terrorists to be sufficiently prepared to train would-be terrorists; (4) knew that his charged conduct would benefit al Qaeda or other terrorists, given his familiarity with how terrorist groups operated; and (5) did not mistakenly engage in the charged conduct.

The Court recognizes that there are special considerations when other act evidence is offered to prove a defendant's intent or knowledge. Specifically, "as a general rule," such an offer "should await the conclusion of the defendant's case." Pitre, 960 F.2d at 1120. "However, where it is apparent that intent [or knowledge] will be in dispute, evidence of prior or similar acts may be introduced during the government's case-in-chief, rather than waiting until the conclusion of the defendant's case." Id. (internal quotation marks omitted). A defendant can take the issue of his intent or knowledge out of dispute, but, to do so, he "must make some statement to the court of sufficient clarity to indicate that the issue will not be disputed." United States v. Colon, 880 F.2d 650, 659 (2d Cir. 1989).

It is apparent that intent and knowledge will be disputed in this case. First, the Government represents that, "[b]ased on informal conversations with defense counsel, it appears that the defense intends to argue at trial, among other things, that Kassir did not knowingly support al Qaeda and other terrorists through his activities." (Gov't's Br. 14.) Second, Defendant himself claimed in a post-arrest interview with an F.B.I. agent that his trip to the United States was nothing more than a

16

vacation. (Id.)  Finally, though the Government highlighted these two facts in its brief, Defendant chose not to address either in his response.  That is to say, Defendant made no statement of sufficient clarity to indicate that he did not dispute his intent or knowledge.  Therefore, at this juncture, it is proper for the Court to rule on the admissibility of other act evidence to prove intent and knowledge; however, the Court reserves its right to revisit its holdings regarding all of the proffered other act evidence should Defendant take his intent and/or knowledge out of dispute.

Although relevant and offered for a proper purpose, Defendant's association with other terrorist groups must also meet the requirements of Rule 403 to be admissible. The Court finds that the danger this evidence will unfairly prejudice the defendant does not substantially outweigh its probative value.  The danger of unfair prejudice is relatively low since Defendant's association with terrorist groups other than al Qaeda "did not involve conduct more inflammatory" than Defendant's charged conduct – providing material support to al Qaeda. United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999) (finding that Rule 403 did not require excluding other act evidence of a past choking

where charged conduct, another choking, was equally inflammatory).

Defendant argues that Defendant's association with terrorist groups other than al Qaeda should be excluded on the ground that it is not sufficiently similar to the charged conduct. This argument goes to the probative value of the evidence. See United States v. Corey, 566 F.2d 429, 431 (2d Cir. 1977) ("Probative value [of other act evidence] is dependent on the existence of a close parallel between the crime charged and the acts shown."); see also United States v. Gordon, 987 F.2d 902, 908 (2d Cir. 1993) ("There is no necessity for synonymity but there must be substantial relevancy."). The Court rejects Defendant's argument. Defendant's association with other terrorist groups is sufficiently similar to the charged conduct to have substantial relevancy. The Court has already explained how this evidence is relevant to Defendant's motive, intent, preparation, knowledge, and absence of mistake or accident.

Defendant also argues that the instant case is analogous to United States v. Al-Moayad, 545 F.3d 139 (2d Cir. 2008). In Al-Moayad, the Second Circuit vacated a conviction against two defendants charged with conspiring to provide material support to terrorist organizations on

18

the ground that the district court admitted unfairly prejudicial evidence of an uncharged terrorist bombing. The analogy is not apt. In Al-Moayad, the only link between the defendants and the bombing was incredibly tenuous: a speaker at a wedding one of the defendants attended made a cryptic allusion to the attack. The defendants were never implicated in the bombing in any way; in fact, they were not even mentioned during the extensive testimony covering the attack. Id. at 161. The district court also only offered to give a limiting instruction so "vague" and "tendentious" that "it was reasonable . . . for [defense] counsel to withdraw his request for a limiting instruction." Id. at 162. The specific uncharged criminal conduct proffered here – and, indeed, all of the uncharged criminal conduct in this case – is conduct by Kassir himself. Thus, its probative value is orders of magnitude stronger than the uncharged criminal activity offered in Al-Moayad. Furthermore, the Court is aware of its obligation to provide clear and understandable limiting instructions, at Defendant's request, to ensure that the jury receives this evidence for its proper, non-propensity purposes.

### 2. Jihad Training Camps in Other Countries

Evidence that Defendant attended or attempted to attend jihad training camps in other countries is admissible to prove Defendant's motive, intent, preparation, knowledge, and absence of mistake or accident. This other act evidence is relevant for these proper purposes since it tends to show, among other things, that Defendant (1) was motivated by a jihadist agenda; (2) intended to establish his own jihad training camp; (3) had received sufficient jihad training to train others and had access to, or was familiar with, jihad training materials that he could distribute over the Internet; (4) knew that establishing a jihad training camp and disseminating jihad training materials over the Internet would materially support al Qaeda; and (5) did not inadvertently perform the charged conduct. The danger that this evidence will unfairly prejudice the defendant does not substantially outweigh its probative value. As with Defendant's association with other terrorist groups, this other act evidence is no more inflammatory than the charged conduct. Therefore, Defendant's prior attendance at, or attempts to attend, jihad training camps is admissible under Rules 404(b) and 403 for the purposes discussed above.

### 3. Admissions of Killings

For the same reasons discussed in reference to Defendant's association with other terrorist groups and his attendance at other jihad training camps, Defendant's claim that he has killed people in the course of fighting jihad is relevant for the purposes of proving his motive, preparation, and absence of mistake or accident. Additionally, this evidence is highly probative of Defendant's knowledge that the ultimate goal of his charged conduct was to kill people. It is also probative of the fact that he intended this to be the ultimate goal. Defendant's knowledge and intent are central issues in the case since Counts One, Two, Six, and Seven accuse Kassir of providing or conspiring to provide material support to terrorists, knowing and intending that the support would assist a conspiracy to kill, kidnap, maim, and injure persons in a foreign country. (Redacted Indictment ¶¶ 2, 4, 12, 14.)

Uncharged murder evidence is highly prejudicial for obvious reasons. See United States v. Khan, 591 F. Supp. 2d 202, 206 (E.D.N.Y. 2008); United States v. Gotti, 399 F. Supp. 2d 417, 420 (S.D.N.Y. 2005) ("Admitting evidence of an uncharged murder raises serious concerns . . . ."). Nonetheless, the danger that uncharged murder evidence will unfairly prejudice the defendant does not necessarily

outweigh the evidence's probative value. See, e.g., United States v. Matera, 489 F.3d 115, 121 (2d Cir. 2007) (finding no abuse of discretion where district court admitted uncharged murders to prove existence of enterprise for RICO purposes); United States v. Miller, 116 F.3d 641, 682 (2d Cir. 1997) (same). Where the uncharged murder evidence is no more serious than the charged conduct, the danger of unfair prejudice is reduced. Cf. United States v. Williams, 205 F.3d 23, 34 (2d Cir. 2000) ("[W]e find no undue prejudice under Rule 403; the evidence did not involve conduct more serious than the charged crime and the district court gave a proper limiting instruction."). In weighing the probative value of an uncharged murder, courts should consider whether its value "is undercut by the availability of other, less prejudicial evidence that makes the same point." Gotti, 399 F. Supp. 2d at 419 (S.D.N.Y. 2005) (internal quotation marks omitted) (citing Old Chief v. United States, 519 U.S. 172, 182-83 (1997) ("[A] judge applying Rule 403 could reasonably apply some discount to the probative value of an item of evidence when faced with less risky alternative proof going to the same point.").

Defendant's admissions that he killed people during jihad fighting have high probative value, and this value is not substantially outweighed by the danger of unfair

prejudice.   The Court reaches this conclusion for several reasons.   First, this evidence is uniquely persuasive on the questions of Defendant's knowledge and intention regarding the ultimate aim of his conduct.   There is no less risky alternative proof that would have the same efficacy.   Second, Defendant faces extremely serious charges, such as those accusing him of directly conspiring to kill people in a foreign country (Counts Five and Ten). Defendant's uncharged killings are no more inflammatory or serious than these accusations.   Finally, the Government has offered to argue only that Defendant <u>claims</u> that he killed people as opposed to arguing that Defendant <u>actually did</u> kill people.   The Court accepts this offer and finds that this distinction in conjunction with limiting instructions, should the Defendant request them, will reduce the danger of unfair prejudice without affecting the evidence's probative value.

Nonetheless, the Court will not allow the Government to elicit testimony regarding the total number of people that Defendant claims he killed.   This ruling bars, for example, evidence that Defendant claims he killed thirty-four people.   This possibly exaggerated total adds nothing to the probative value of the evidence while greatly increasing its prejudicial effect.   Thus, the Court will

permit Angelica Osman to testify that Kassir, during a knife-fighting demonstration, said he had used that very knife to kill non-believers. The Court will also permit Ayat Hakima to testify that Kassir said he killed people for Usama bin Laden by various methods while fighting jihad, but there shall be no reference to the total number of killings claimed by Kassir.

## Conclusion

This constitutes the Court's ruling on the motion in limine.

**SO ORDERED.**

Dated:     New York, New York
           April  9  , 2009

                                        JOHN F. KEENAN
                                United States District Judge